D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MONDHER BEJAOUI,

                    Plaintiff,

       -against-

THE CITY OF NEW YORK, Police Officers "JOHN
and JANE DOE" 1 through 10 of the NYPD's 60th,
62nd, and 68th Precincts, KAWSAR MANSY,
SARA MANSY, MOHAMMED MANSY, and
SABEENA MADNI,

                    Defendants.
------------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**13-CV-5667 (NGG) (RML)**

Plaintiff Mondher Bejaoui ("Plaintiff" or "Bejaoui") brings this action pursuant to 42

U.S.C. § 1983 against the City of New York (the "City"), several unknown officers of the New

York City Police Department ("NYPD"), and civilians Kawsar Mansy, Sara Mansy, Mohammed

Mansy, and Sabeena Mandi.[1] (See Compl. (Dkt. 1) ¶ 1.) Plaintiff seeks compensation for the

alleged violation of his constitutional rights, arising out of several arrests and his prosecution in

New York State court between December 2006 and October 2010. (See id. ¶ 24.) The City of

New York filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) on both

substantive and procedural grounds, both on its behalf and on behalf of the unknown officers

(collectively, the "Defendants"). (See Mot. to Dismiss ("Mot.") (Dkt. 7) at 2.) For the reasons

set forth below, Defendants' motion is GRANTED in its entirety, and Plaintiff's claims are

DISMISSED WITH PREJUDICE.

---

[1] As of the date of this Memorandum and Order, the docket in this action reflects that the civilian defendants have not been served with process. See infra Part III.

1

## I. BACKGROUND

### A. Facts Alleged in the Complaint

The following facts are alleged in Plaintiff's Complaint. Sometime in late Fall 2006, Plaintiff, who ran an accounting business based in Brooklyn, New York, fired one of his employees, Kawsar Mansy, for allegedly stealing money from the business. (Compl. ¶¶ 9-10.) On December 4, 2006, Plaintiff received a call from the NYPD's 62nd Precinct requesting that he come to the police station. (Id. ¶ 9.) When Plaintiff arrived at the station, he was immediately arrested and charged with (1) harassment in the second degree, and (2) aggravated harassment in the second degree for making phone calls to his former employee, requesting that she return the money. (Id.) After Plaintiff had been processed, on December 5, 2006, he was brought before a Kings County Criminal Court Judge, who released Plaintiff on his own recognizance. (Id.)

On June 7, 2007, Plaintiff made an appearance in Kings County Criminal Court in connection with the December 4, 2006, arrest and charges. (Id. ¶ 11.) While he was in the courthouse, Plaintiff was arrested by an NYPD officer, who handcuffed him and brought him to the 60th Precinct. (Id.) There, Plaintiff was charged with two additional counts of aggravated harassment in the second degree for violating an order of protection[2] by placing phone calls to Sara Mansy, his former employee's sister, requesting that she tell her sister to drop the charges against him. (Id.) Plaintiff was processed and released on his own recognizance that same day. (Id.)

On July 3, 2007, officers from the NYPD's 68th Precinct came to Plaintiff's home and arrested him again for violating the order of protection by calling Mohammed Mansy, his former employee's father. (Id. ¶ 12.) Plaintiff was taken to the 68th Precinct and charged with: (1) two

___
[2] This order was presumably issued in connection with the earlier charges.

counts of criminal contempt in the first degree; (2) two counts of criminal contempt in the second degree; (3) tampering with a witness in the third degree; and (4) harassment in the second degree. (Id.) Plaintiff was then taken to Kings County Central Booking, where he was remanded on a bail package set at $25,000. (Id.) Unable to make bail, Plaintiff was detained at Riker's Island Correctional Facility. (Id.) On or about July 10, 2007, Plaintiff was taken to Kings County Criminal Court, where bail was dropped, and Plaintiff was released from custody. (Id. ¶ 13.) Nonetheless, these charges were subsequently consolidated with the prior charges into a single indictment, which issued against Plaintiff on August 1, 2007. (Id. ¶ 15.)

On May 15, 2008, Plaintiff appeared in Kings County Supreme Court in connection with the August 1, 2007, indictment. (Id. ¶ 16.) At that appearance, Plaintiff was remanded into custody on allegations that he had again contacted Kawsar Mansy, in violation of the order of protection. (Id.) Unable to make bail, which was set at $50,000, Plaintiff was again remanded to custody at Riker's Island, where he was held for over two years. (Id. ¶¶ 16-17.)

On July 29, 2010, Plaintiff was taken into custody by the Federal Bureau of Investigation and transferred to the Metropolitan Correctional Center ("MCC") in Manhattan in connection with mail fraud charges based on unrelated conduct. (Id. ¶¶ 20-21.) His transfer notwithstanding, Plaintiff continued to make appearances in Kings County Supreme Court, during which he alleges the prosecution repeatedly announced it was not ready for trial, indicating on one occasion that the complaining witness was getting married, and on another, that the complaining witness was sick. (Id. ¶¶ 17, 22.) Plaintiff's state law charges were ultimately dismissed on October 12, 2010, but Plaintiff remained in federal custody until September 19, 2013.[3] (Id. ¶¶ 17, 20-22.)

---

[3] Plaintiff is not seeking to recover damages stemming from his federal arrest and detention. (Id. ¶ 22.)

Plaintiff contends that while he was incarcerated, he developed a nerve problem that was never treated, which resulted in the loss of the use of his legs and confined him to a wheelchair.[4] (Id. ¶ 18.) Plaintiff also alleges that as a consequence of his multiple arrests and lengthy imprisonment, he suffered and continues to suffer serious physical and emotional injuries. (Id. ¶¶ 24-27.) Beyond these physical and emotional injuries, Plaintiff further maintains that while he was detained at MCC, he was ruled to be mentally incompetent to stand trial with respect to his federal charges "from December 2010 to September of 2012." (Id. ¶ 23.) According to Plaintiff, "this information goes to toll plaintiff['s] time to file the within action, as well as the fact that he was ultimately released from incarceration on September 19, 2013." (Id.)

### B.     Additional Facts Offered by Defendants

Defendants attach to the motion certain additional documents that Plaintiff did not explicitly include in the Complaint, but which Defendants contend supplement the relevant facts alleged by Plaintiff.[5] (See Mot. at 3-4.) Of particular relevance here is the additional information about Plaintiff's federal criminal prosecution, United States v. Bejaoui, No. 10-CR-553 (SHS) (S.D.N.Y.), before U.S. District Judge Sidney H. Stein in the Southern District of

---

[4] In the Complaint, Plaintiff does not indicate when this problem developed, or when he was confined to a wheelchair.

[5] Specifically, Defendants provide NYPD records indicating that Plaintiff was arrested on December 4, 2006, as a result of Kawsar Mansy's complaint that Plaintiff "has been calling her numerous times," and stated, "If I can't have you I'll shoot you." (Dec. 1, 2006, Complaint Report; Dec. 4, 2006, Arrest Report (Decl. of Matthew J. Modafferi ("Modafferi Decl."), Ex. C (Dkt. 8-3)).) Another set of NYPD records demonstrate that Plaintiff was arrested on June 7, 2007, in connection with a complaint by Sara Mansy that Plaintiff called her and threatened her sister in violation of a valid order of protection. (See June 4, 2007, Complaint Report; June 6, 2007, Complaint Follow-up Report; June 7, 2007, Arrest Report (Modafferi Decl., Ex. D (Dkt. 8-4)).) NYPD records further indicate that Plaintiff was arrested on July 3, 2007, as a result of Mohamed Mansy's complaint that Plaintiff told him, "I know your daughters filed complaints against me and I need to hurt them," which violated two orders of protection against Plaintiff. (June 28, 2007, Complaint Report; July 3, 2007, Arrest Report (Modafferi Decl., Ex. E (Dkt. 8-5)).) Defendants also attach documents related to Plaintiff's obligation to file a notice of claim. According to Defendants' submission, on March 2, 2011, the New York City Comptroller's Office received Plaintiff's Notice of Claim, which was dated February 22, 2011. (Personal Injury Claim Form (Modafferi Decl., Ex. H (Dkt. 8-7) at 1-2).) On April 7, 2011, the Comptroller's Office responded, notifying Plaintiff that his claim had been disallowed as a result of his failure to file within 90 days from the date of occurrence as required by the New York City General Municipal Law section 50-e. (Apr. 7, 2011, Ltr. from Verna Baptiste to Mondher Bejaoui (Modafferi Decl., Ex. H at 3).)

New York. On October 6, 2011—while Plaintiff was apparently in federal custody in Devens, Massachusetts—Judge Stein found that Plaintiff was mentally incompetent to stand trial in that case, and committed Plaintiff to hospitalization or treatment in a medical facility. (See Oct. 7, 2011, Order, Bejaoui, No. 10-CR-553 (Modafferi Decl., Ex. F (Dkt. 8-6)).) Plaintiff was subsequently transferred to a federal medical center in Butner, North Carolina, for the purpose of determining whether he was likely to be restored to competency. (Oct. 3, 2012, Hr'g Tr. at 3:14-17, Bejaoui, No. 10-CR-553 (Modafferi Decl., Ex. G (Dkt. 8-7)).) But in March 2012, two forensic psychiatrists examined Plaintiff and determined that he was in fact competent to stand trial, and that he had been "malingering, that is, intentionally displaying or exaggerating symptoms of mental illness." (Id. at 3:17-22.) On August 13 and 14, 2012, after Plaintiff had been examined by his own psychiatric expert, Judge Stein conducted a hearing pursuant to 18 U.S.C. § 4247(d) to determine Plaintiff's competency to stand trial. (Id. at 4:8-12.) On October 3, 2012, Judge Stein found by a preponderance of the evidence that Plaintiff was competent to stand trial, could understand the nature and consequences of the proceedings against him, and had the ability to assist properly in his defense.[6] (Id. at 2:16-19, 16:6-9.)

## C.     Procedural History

On October 15, 2013, Plaintiff filed the instant Complaint against Defendants alleging that these arrests and his detention in state custody violated his rights under the federal

---

[6] In reaching this conclusion, Judge Stein emphasized "the apparent disconnect between the symptoms of psychosis, paranoia, and dementia at times demonstrated by [Plaintiff] in the presence of his physicians and his attorneys on the one hand and, on the other hand, what both sides concede is a markedly improved mental capacity when he speaks with his wife or friend by telephone on the other hand." (Id. at 6:11-17; see also id. at 8:24-9:5 ("Bejaoui expressed strikingly disorganized thoughts to his examiners, but when he wanted something from the medical personnel . . . he became intelligible to such a degree that he dealt directly with a notary, told him where to sign the document . . . and even pointed out to her [sic] that the power of attorney granted the power solely over his financial affairs."); 10:5-14 (noting Plaintiff's phone calls with a friend, which were recorded, "reveal[ed] that he is able to digest complex issues"); 13:9-14:12 (noting Plaintiff's phone calls with his wife established that Plaintiff "ha[d] a significant ability to strategize in protecting and advancing his own interests even in a legal context and, when motivated, can effectively communicate his thinking and directions to others").) Judge Stein ultimately determined that Plaintiff "consider[ed] his noncooperative behavior to be a method of influencing his attorneys." (Id. at 15:21-23.)

Constitution and New York State common law. (See generally Compl.) Pursuant to 42 U.S.C. §§ 1983 and 1985, Plaintiff asserts federal causes of action for false arrest (see id. ¶¶ 30-32 (First Cause of Action)), malicious prosecution (id. ¶¶ 36-38 (Third Cause of Action)), violation of his Sixth Amendment speedy trial right (id. ¶¶ 39-41 (Fourth Cause of Action)), and municipal liability (id. ¶¶ 45-47 (Sixth Cause of Action)). Plaintiff also alleges state law claims of false arrest (id. ¶¶ 33-35 (Second Cause of Action)), malicious prosecution (id. ¶¶ 42-44 (Fifth Cause of Action)), and negligence (id. ¶¶ 48-50 (Seventh Cause of Action)).

On April 30, 2014, Defendants moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (Mot. at 2.) It their motion, Defendants argue that each of Plaintiff's claims is barred on statute of limitations grounds, and that Plaintiff's state law claims are further barred as a result of Plaintiff's failure to comply with state law notice-of-claim requirements. (Id. at 2, 13-14.) Defendants further contend that Plaintiff's federal and state claims against the unnamed officers as well as the municipality must be dismissed on substantive grounds insofar as they fail to state a claim upon which relief may be granted. (Id. at 2.) As the court noted above, Defendants also attach certain documents to the motion that Plaintiff did not include in his Complaint.[7] Defendants contend that the court may consider these in deciding their motion to dismiss. (Id. at 5-7.) In the alternative, Defendants ask that the court convert the motion to dismiss into a Rule 56 motion for summary judgment pursuant to Rule 12(d). (Id. at 7.)

Plaintiff responded in opposition to the motion on June 26, 2014. (Mem. in Opp'n to Mot. ("Opp'n") (Dkt. 10).) In response to Defendants' claims on statute of limitations grounds, Plaintiff argues, among other things, that he is entitled to statutory tolling for some of his claims

---

[7] In addition, both Plaintiff and the City attach to their moving papers separate copies of Plaintiff's indictment in People v. Bejaoui, No. 6397/2007 (N.Y. Sup. Ct.). (Decl. of Chidi Eze, Ex. 2 (Dkt. 11-2); Modafferi Decl., Ex. B (Dkt. 8-2).)

on the basis of his mental incapacity (see id. at 9-10), and—generously construed—equitable tolling for other claims on the basis of his incarceration (see id. at 7, 10, 11). Defendants submitted a reply on July 11, 2014. (Reply in Supp. of Mot. ("Reply") (Dkt. 12).)

## II.    DISCUSSION

### A.    Legal Standard

"An argument that the statute of limitations bars a claim is properly raised in a motion to dismiss under Rule 12(b)(6)." Vasconcellos v. City of N.Y., No. 12-CV-8445 (CM), 2014 WL 4961441, at *2 (S.D.N.Y. Oct. 2, 2014) (citing Adams v. Crystal City Marriott Hotel, No. 02-CV-10258 (PKL), 2004 WL 744489, at *2-3 (S.D.N.Y. Apr. 6, 2004); Harriman v. IRS, 233 F. Supp. 2d 451, 455 (E.D.N.Y. 2002)); see also Bastien v. Samuels, No. 14-CV-1561 (JFB) (AKT), 2014 WL 5306016, at *3 (E.D.N.Y. Oct. 15, 2014) ("Although the statute of limitations is an affirmative defense, it 'may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) without resort to summary judgment procedure, if the defense appears on the face of the complaint." (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998))), appeal filed, No. 14-4326 (2d Cir. Nov. 12, 2014). This principle is significant "because the [c]ourt may only consider the complaint and documents attached thereto or incorporated by reference when deciding a motion to dismiss pursuant to Rule 12(b)(6)." Harriman, 233 F. Supp. 2d at 455. Thus, the court begins by outlining the appropriate standard used in evaluating a Rule 12(b)(6) motion before proceeding to analyze the types of documents it may consider when conducting that evaluation.

### 1.    Motion to Dismiss

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. See Patane v. Clark, 508 F.3d 106, 112

7

(2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw all reasonable inferences from these allegations in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S. at 555). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

2.    Extrinsic Documents Considered

Rule 12 also provides as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Thus, as a general rule, courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citing Global Network

Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154-55 (2d Cir. 2006)). "As indicated by the word '[must],' the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory." Id. (citing Global Network, 458 F.3d at 155).

This conversion requirement notwithstanding, in certain circumstances a court "may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Id. In addition, "even if not attached or incorporated by reference," id., extrinsic materials may be considered by the court if they are "integral to the complaint" or appropriate subjects for judicial notice. See Global Network, 458 F.3d at 156 (citing Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (integral to the complaint); Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991) (judicial notice)).

For a document to be considered integral to a complaint, a plaintiff must "rel[y] on the terms and effect of [the] document in drafting the complaint . . . ; mere notice or possession is not enough." Id. (alterations and emphasis in original) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (courts may consider an extrinsic document when the complaint "relies heavily upon its terms and effect")). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint," however, "the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Chambers, 282 F.3d at 153. The purpose of this exception is to "prevent[] plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." Global Network, 458 F.3d at 157.

9

Extrinsic materials may also be considered—without converting the motion into one for summary judgment—if they constitute "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). Under Rule 201, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Thus, "[c]ourt records and other public records are facts of which a court may properly take judicial notice pursuant to Rule 201." Konrad v. Epley, No. 12-CV-4021 (JFB) (ETB), 2013 WL 6200009, at *8 n.5 (E.D.N.Y. Nov. 25, 2013) (order adopting report and recommendation), aff'd, 586 F. App'x 72 (2d Cir. 2014) (summary order); see also Global Network, 458 F.3d at 157 ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998))).

### B.     Application

#### 1.     Extrinsic Documents

While Defendants argue that the complaint reports and arrest reports are integral to the Complaint, citing Obilo v. City University of City of New York, No. 01-CV-5118 (DGT), 2003 WL 1809471, at *3-5 (E.D.N.Y. Apr. 7, 2003) (noting "strong argument" that contents of incident report, police complaint, and complaint follow-up report were integral or "central" to plaintiff's false arrest claim), it is hardly clear that Plaintiff in this case heavily relied on the terms and effects of those documents. See, e.g., Chambers, 282 F.3d at 153; see also Global Network, 458 F.3d at 157 ("In most instances where this exception is recognized, the

10

incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint."); Alvarez v. Cnty. of Orange, N.Y., No. 13-CV-7301 (KMK), 2015 WL 1332347, at *9 (S.D.N.Y. Mar. 25, 2015) (noting disagreement among district courts in the Second Circuit as to whether incident reports, arrest reports, and police complaints may be considered in resolving 12(b)(6) motions with respect to false arrest claims because the documents are integral to such claims (collecting cases)).

Although it appears that Plaintiff was aware of his dates of arrest, dates of release, and the charges that were filed against him on each date, it is far from obvious that Plaintiff actually—let alone, heavily—relied on the complaint reports and arrest reports in drafting his Complaint, particularly in light of the discrepancy between the content of the reports and what he alleges with respect to the underlying complaints. Compare supra note 5, with supra Part I.A. Where, as here, Plaintiff does not mention these documents and does not appear to rely on them, the court cannot deem such extrinsic materials to be integral to the Complaint in considering a 12(b)(6) motion to dismiss. See, e.g., Weaver v. City of N.Y., No. 13-CV-20 (CBA) (SMG), 2014 WL 950041, at *3 (E.D.N.Y. Mar. 11, 2014) ("[Plaintiff]'s complaint contains no reference to the arrest report and this Court does not find that the report is 'integral' to [Plaintiff]'s allegations within the meaning of that exception."); Martin v. Cnty. of Nassau, 692 F. Supp. 2d 282, 289 (E.D.N.Y. 2010) ("[I]n framing his complaint the plaintiff did not rely upon the documents the defendants are asking the court to consider.").

There is also disagreement among district courts in the Second Circuit as to whether these types of documents, including notice-of-claim documents, constitute public records of which

courts may take judicial notice. See Alvarez, 2015 WL 1332347, at *10 (collecting cases); see also Peterec v. Hilliard, No. 12-CV-3944 (CS), 2013 WL 5178328, at *3 (S.D.N.Y. Sept. 16, 2013) ("It is not proper . . . for me to consider either the incident report or Plaintiff's Notice of Claim in resolving a motion to dismiss where, as here, they were not attached, incorporated by reference, or integral to the [complaint]." (citing cases)). Defendants cite Harris v. Howard, No. 08-CV-4837 (CM), 2009 WL 3682537, at *2 (S.D.N.Y. Oct. 30, 2009), for the proposition that it is "well established" that a district court can rely on arrest reports, among other materials, as public records in deciding a motion to dismiss. (See Mot. at 6.) But where many courts disagree—including courts in this district—and the Second Circuit has not explicitly held as much, this court hesitates to make such a finding. See Alvarez, 2015 WL 1332347, at *11 ("[C]aution must be used in determining that a fact is beyond controversy under Rule 201(b)." (quoting Int'l Star, 146 F.3d at 70)).

Moreover, whether the court takes these documents into account has no effect on the ultimate decision on Defendants' motion to dismiss in this case. As the following analysis shows, Plaintiff's claims fail on procedural and substantive grounds regardless of the content of the extrinsic materials. See infra Part II.B.2-3. In drawing this conclusion, the court only need consider Plaintiff's state court indictment, and Judge Stein's orders in Plaintiff's federal case, which are both clearly public records[8] upon which this court can rely—not for the truth of the matters asserted, but to establish their existence and legal effect. See Roth, 489 F.3d at 509 ("If the court takes judicial notice, it does so in order 'to determine what statements [they] contained'—but 'again not for the truth of the matters asserted.'" (emphasis in original) (quoting

---

[8] It does not appear that the indictment is incorporated by reference into Plaintiff's Complaint. Cf., e.g., Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale into the complaint."); Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (documents not incorporated by reference where complaint "merely discussed these documents and presented short quotations from them").

Kramer, 937 F.2d at 774); see also Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (citing 5-Star Mgmt., Inc. v. Rogers, 940 F. Supp. 512, 518 (E.D.N.Y. 1996) (taking judicial notice of pleadings in other lawsuits)); Crews v. Cnty. of Nassau, No. 06-CV-2610 (JFB) (WDW), 2007 WL 316568, at *2 n.2 (E.D.N.Y. Jan. 30, 2007) ("Courts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings." (alteration in original) (quoting Kramer, 937 F.2d at 774 (internal quotation marks omitted); citing Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 247 n.20 (S.D.N.Y. 2002) (taking judicial notice of transcript of hearing in considering Rule 12(b)(6) motion to dismiss)). Thus the court need not, and does not, decide what effect, if any, the complaint reports, arrest reports, and notice of claim documents have in deciding the present 12(b)(6) motion to dismiss.

### 2. Federal Claims

Where, as in New York, state law provides multiple statutes of limitations for personal injury actions, "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989). In New York, the statute of limitations governing general personal injury actions is three years.[9] Id. at 251; Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013) (citing Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002)); N.Y. C.P.L.R. 214(5) (McKinney 2015)); see also Paige v. Police Dep't of City of Schenectady, 264 F.3d 197, 199 n.2 (2d Cir. 2001) (applying New York's three-year statute of limitations to both section 1983 and 1985 claims). While state law governs the statute of limitations period, federal law determines when a section 1983 claim accrues. Wallace v. Kato, 549 U.S. 384, 388 (2007). Under federal law, "it is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit

---

[9] The parties do not appear to dispute that New York law governs this action.

13

and obtain relief." Id. (alteration in original) (internal quotation marks and citations omitted); see also Singh v. Wells, 445 F. App'x 373, 376 (2d Cir. 2011) (summary order) ("Under the federal 'discovery' rule, a cause of action accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" (quoting Pearl, 296 F.3d at 80)).

"Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007) (quoting Pearl, 296 F.3d at 80); but see Bd. of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980) ("In § 1983 actions, however, a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible. In most cases, they are binding rules of law."). New York law provides for statutory tolling of certain actions as a result of a plaintiff's insanity. Specifically, the New York Civil Practice Law and Rules provide:

> If a person entitled to commence an action is under a disability because of . . . insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . . ; if the time otherwise limited is less than three years, the time shall be extended by the period of disability.

N.Y. C.P.L.R. 208 (McKinney 2015) (emphasis added).[10] "The New York Court of Appeals has stated that the insanity toll applies to 'individuals who are unable to protect their legal rights because of an over-all inability to function in society.'" Carmichael v. Hobbs, 371 F. App'x 155, 157 (2d Cir. 2010) (summary order) (quoting McCarthy v. Volkswagen of Am.,

---

[10] Significantly, "while New York has codified a number of statutory tolling provisions, imprisonment does not itself act as a toll for prisoners bringing § 1983 claims." Bastien v. Samuels, No. 14-CV-1561 (JFB) (AKT), 2014 WL 5306016, at *4 (E.D.N.Y. Oct. 15, 2014) (internal quotation marks omitted) (citing cases), appeal filed, No. 14-4326 (2d Cir. Nov. 12, 2014).

Inc., 435 N.E.2d 1072, 1075 (N.Y. 1982) (holding the insanity toll did not apply "to an individual claiming mere post traumatic neurosis")); see also Joseph S. v. Hogan, 561 F. Supp. 2d 280, 315 (E.D.N.Y. 2008) ("The Court of Appeals has stated that New York's insanity toll should be 'narrowly interpreted' based on its legislative history, which indicates that efforts to substitute the phrase 'mental illness' for 'insanity' were rejected." (quoting McCarthy, 435 N.E.2d at 1074)).

"Once the defendant demonstrates that the claim facially falls outside the limitations period, the plaintiff, not the defendant, bears the burden of proof to show that § 208 is applicable and tolling is appropriate." Washington v. Doe, No. 08-CV-4399 (NGG) (RML), 2011 WL 679919, at *2 (E.D.N.Y. Feb. 16, 2011) (citing Doe v. Holy See (State of Vatican City), 793 N.Y.S.2d 565, 567 (App. Div. 2005)). "Difficulty in functioning is not sufficient to establish insanity for purposes of § 208; rather, the plaintiff must be totally unable to function as a result of a severe and incapacitating disability." Eng v. Reichardt, No. 14-CV-1502 (ENV) (LB), 2014 WL 2600321, at *3 (E.D.N.Y. June 9, 2014) (quoting Washington, 2011 WL 679919, at *2). "To qualify for tolling under C.P.L.R. 208, the plaintiff must also satisfy the 'continuous disability' requirement, which requires a showing that 'the disability of insanity was continuous during the relevant period.'" Basher v. Madonna Realty, No. 01-CV-5116 (DLI) (VVP), 2007 WL 174130, at *3 (E.D.N.Y. Jan. 19, 2007) (order adopting report and recommendation) (quoting Libertelli v. Hoffman-La Roche, Inc., 565 F. Supp. 234, 236 (S.D.N.Y. 1983); Carter v. Doe, No. 05-CV-8432, 2006 WL 2109461, at *3 (S.D.N.Y. July 26, 2006)). "Therefore, 'if the plaintiff had a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and not resurrected when a plaintiff relapses into insanity.'" Id. (quoting Carter, 2006 WL 2109461, at *3).

Still, the Second Circuit has also applied so-called "equitable tolling" in section 1983 cases "in 'rare and exceptional circumstances,' where [it] found that 'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [sought] to toll.'" Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (quoting Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004)); see also Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (per curiam) (holding that the "exceptional circumstances" necessary for a plaintiff to establish tolling must be "beyond his control"). Thus, a court may—as a matter of its discretion—equitably toll a statute of limitations "where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." See Zerilli-Edelglass v. N.Y. City Transit Aut., 333 F.3d 74, 80, 81 (2d Cir. 2003) (citing Brown v. Parkchester S. Condos., 287 F.3d 58, 60 (2d Cir. 2002) (Sotomayor, J.)). "The burden of demonstrating the appropriateness of equitable tolling, however, lies with the plaintiff." Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) ("While mental illnesses are as varied as physical illnesses, which is why [the Second] Circuit adheres to a case-specific approach, [Plaintiff]'s conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling."); see also Jennings v. Municipality of Suffolk Cnty., No. 11-CV-911 (JFB) (ARL), 2013 WL 587892, at *5 (noting equitable tolling doctrine is "to be applied sparingly" (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002))).

### a. False Arrest

"[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace, 549 U.S.

at 397. A claimant is detained pursuant to legal process when, "'for example, he is bound over by a magistrate or arraigned on charges.'" Lynch v. Suffolk Cnty. Police Dep't, Inc., 348 F. App'x 672, 675 (2d Cir. 2009) (summary order) (quoting Wallace, 549 U.S. at 388-89).

Plaintiff's Complaint alleges that he was falsely arrested on three separate occasions: first, when he was arrested on December 4, 2006, and arraigned on December 5, 2006 (Compl. ¶ 9); second, when he was arrested on June 7, 2007, and arraigned that same day (id. ¶ 11); and third, when he was arrested on July 3, 2007, and arraigned sometime thereafter—no later than July 4, 2007[11] (id. ¶¶ 12-13).[12] As a result, the limitations period for each of Plaintiff's false arrest claims expired on December 7, 2009; June 7, 2010; and July 5, 2010, respectively.[13] Because Plaintiff filed his Complaint on October 15, 2013, Plaintiff's federal false arrest claims are untimely.

Although Plaintiff argues that his time to file these claims was tolled as a result of his continuous incarceration from May 15, 2008, to September 19, 2013 (Opp'n at 11-12), Plaintiff cites no authority for this proposition, which is plainly contradictory to governing law. See, e.g., Venticinque v. Brown, No. 09-CV-2861 (DLI) (MDG), 2010 WL 1486449, at *2 (E.D.N.Y. Apr. 14, 2010) ("While New York has codified a number of statutory tolling provisions, imprisonment does not itself act as a toll for prisoners bringing § 1983 claims." (citing Pinaud v.

---

[11] Plaintiff does not allege the exact day he was remanded to Rikers Island after his July 3, 2007, arrest. (See Compl. ¶ 12.) Plaintiff does allege, however, that he was taken from Rikers Island to Kings County Criminal Court on or about July 10, 2007, and that this was six or seven days after he arrived at Rikers. (Id. ¶ 13.)

[12] Plaintiff also appears to allege that he was falsely arrested on May 15, 2008, when he was remanded by a judge on $50,000 bail. (See Opp'n at 10.) The court need not address whether this claim is timely filed, as Plaintiff is unable to plead proximate causation on the part of Defendant officers or the City. See Townes v. City of N.Y., 176 F.3d 138, 146 (2d Cir. 1999) (tort concept of proximate cause applies in section 1983 actions); see also Wray v. City of N.Y., 490 F.3d 189, 193 (2d Cir. 2007) (unless officer misled or pressured the prosecution or trial judge, court cannot conclude that the officer's conduct caused the violation of plaintiff's constitutional rights). Even if it had considered this claim, it would also be dismissed with prejudice as untimely. See supra Part II.B.2.a.

[13] "[W]hen a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period." Mickens v. United States, 148 F.3d 145, 148 (2d Cir. 1998) (citing Fed. R. Civ. P. 6(a)). If, however, the last day is a Saturday, Sunday, or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

Cnty. of Suffolk, 798 F. Supp. 913, 922 (E.D.N.Y. 1992)); Coleman v. City of N.Y., No. 08-CV-5276 (JG) (LB), 2009 WL 3381541, at *3 (E.D.N.Y. Oct. 20, 2009) (noting that incarceration does not entitle plaintiff to equitable tolling because it is not an extraordinary circumstance within the meaning of Walker, 430 F.3d at 564). Since Plaintiff's federal false arrest claims are therefore barred on statute of limitations grounds, this failure would not be cured by further amendment of the pleadings.[14] See, e.g., Harrison v. N.Y., No. 14-CV-1296 (JFB) (AKT), 2015 WL 1413359, at *4 (E.D.N.Y. Mar. 20, 2015); In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 393 (S.D.N.Y. 2003) ("Any attempt to amend claims barred by the statute of limitations is futile."). As a result, this claim is DISMISSED WITH PREJUDICE.

### b. Malicious Prosecution

A cause of action for malicious prosecution pursuant to section 1983 does not accrue "until the criminal proceedings have terminated in the plaintiff's favor." Heck v. Humphrey, 512 U.S. 477, 489 (1994); see also Walters v. City Dep't of Corr., 517 F. App'x 41, 42 (2d Cir. 2013) (summary order) ("The statute of limitations on a malicious prosecution claim begins to run 'when the underlying criminal action is conclusively terminated.'" (quoting Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995))).

---

[14] In connection with Plaintiff's contention that the statute of limitations with respect to his malicious prosecution claim is tolled as a result of his mental incompetence from December 2010 to September 2012 (see Opp'n at 9-10), the court notes Plaintiff has not argued that this toll applies to his false arrest claims. This is not surprising, given that the latest any such claim expired was July 5, 2010 (see supra Part II.B.2.a), and even by Plaintiff's own allegations, he was not mentally incompetent until December 2010 (Compl. ¶ 23). Even if, however, Plaintiff could maintain a claim for false arrest based on his May 15, 2008, remand, which he cannot, see supra note 12—or if Plaintiff had alleged that his mental incompetency began earlier, the court could take judicial notice of the fact that Plaintiff was not ruled mentally incompetent until October 6, 2011. (See Oct. 3, 2012, Hr'g Tr. at 2:22 (noting defense counsel requested psychiatric evaluation on January 24, 2011).) As a result, Plaintiff would still not be entitled to either statutory or equitable tolling of the statute of limitations on insanity grounds. See N.Y. C.P.L.R. 208 (requiring insanity at the time the cause of action accrues); Basher v. Madonna Realty, No. 01-CV-5116 (DLI) (VVP), 2007 WL 174130, at *3 (E.D.N.Y. Jan. 19, 2007) (order adopting report and recommendation) (noting incapacity must be continuous throughout the period to be tolled (quoting Libertelli v. Hoffman-La Roche, Inc., 565 F. Supp. 234, 236 (S.D.N.Y. 1983))); Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (to obtain equitable tolling, the plaintiff must have acted with "reasonable diligence throughout the period" he sought to toll (emphasis added)).

Here, Plaintiff alleges that he was indicted on August 1, 2007, but that these charges were not dismissed until October 12, 2010. (Compl. ¶¶ 15, 17, 20.) Therefore, the statute of limitations on his claim for malicious prosecution would have otherwise expired on October 12, 2013. Mickens v. United States, 148 F.3d 145, 148 (2d Cir. 1998) ("[W]hen a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period." (citing Fed. R. Civ. P. 6(a)). But, as the City concedes (see Reply at 8 n.4), because October 12, 2013, fell on a Saturday, and the following Monday was a "legal holiday," within the meaning of Federal Rule of Civil Procedure 6(a), Plaintiff's malicious prosecution claim was timely, since it was filed on October 15, 2013—the next day that was not a Saturday, Sunday, or legal holiday.[15] See Fed. R. Civ. P. 6(a)(1)(C); see also Commadari v. Long Island Univ., 89 F. Supp. 2d 353, 379-80 (E.D.N.Y. 2000) (taking judicial notice of the date of the Thanksgiving holiday in 1998).

Its timeliness notwithstanding, Plaintiff's malicious prosecution claim fails on substantive grounds. To state a claim for malicious prosecution, a plaintiff is required to establish: "(1) the initiation or continuation of a criminal proceeding; (2) termination of the criminal proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003); see also Boyd v. City of N.Y., 336 F.3d 72, 75 (2d Cir. 2003) ("The elements of false arrest and malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law." (quoting Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992))). "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of

---

[15] Thus, the court need not consider Plaintiff's tolling argument based on his alleged mental incapacity. (See Compl. ¶ 23; Opp'n at 9-10.)

19

N.Y., 336 F.3d 72, 76 (2d Cir. 2003). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

An indictment by a grand jury creates a presumption that a prosecution was supported by probable cause. Id. In order to rebut that presumption, a plaintiff must establish that the indictment was obtained by fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith. Manganiello v. City of N.Y., 612 F.3d 149, 162 (2d Cir. 2010); Boyd, 336 F.3d at 76; Savino, 331 F.3d at 72 ("The District Court also correctly recognized that, under New York law, indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." (emphasis in original) (internal quotation marks omitted)). "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004) (quoting Colon v. City of N.Y., 455 N.E.2d 1248, 1250 (N.Y. 1983)).

Plaintiff's malicious prosecution claim fails because Plaintiff has not pleaded facts to plausibly suggest that his grand jury indictment was procured by fraud, perjury, the suppression of evidence, or other bad faith police conduct. See Savino, 331 F.3d at 73. In fact, insofar as Plaintiff alleges that he "was not given notice of any Grand Jury proceeding, and was never called to testify before a Grand Jury" (Compl. ¶ 15), Plaintiff essentially acknowledges that he is unable to rebut the presumption of probable cause that results from his indictment. See Rothstein, 373 F.3d at 284 ("[I]n arguing below that the grand jury proceedings were irrelevant,

[appellant]'s counsel conceded that he had no idea what happened before the grand jury. His belated argument that [the witness] must have testified falsely to the grand jury amounts to rank speculation."). Moreover, Plaintiff asserts nothing more than the bare and conclusory allegation that "Defendants maliciously prosecuted plaintiff without probable cause to believe that he committed the charged offenses." (Compl. ¶ 37.) As a result, not only has Plaintiff failed to state a claim for malicious prosecution, but the court discerns no basis upon which this failure may be cured by amended pleadings. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [Plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). As a result, Plaintiff's federal malicious prosecution claim is DISMISSED WITH PREJUDICE.

### c. Sixth Amendment Violation

Although Defendants argue that Plaintiff's Sixth Amendment claim is barred by the statute of limitations, Defendants offers no explanation for this contention. (See Mot. at 9.) Alternatively, however, Defendants argue that to the extent Plaintiff alleges this claim against the John Doe police officers, Plaintiff cannot satisfy the element of causation with respect to his speedy trial claim. (Id. at 20.) The court agrees. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. However, a section 1983 action, "like its state tort analogs, employs the principle of proximate causation." Townes v. City of N.Y., 176 F.3d 138, 146 (2d Cir. 1999); see also Higazy v. Templeton, 505 F.3d 161, 181 (2d Cir. 2007) (Jacobs, C.J., concurring) ("Our cases affirm that traditional tort law principles apply equally to a Section 1983 plaintiff and require him to show the causal link from the original police misconduct up to the point of injury in order to proceed on his claim.").

Thus, "[i]t is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment." Townes, 176 F.3d at 147; see also Wray v. City of N.Y., 490 F.3d 189, 195 (2d Cir. 2007) (finding no violation of federal constitutional right enforceable under section 1983 in the absence of evidence that police officer misled or pressured the prosecution or trial judge); Lundt v. City of N.Y., No. 12-CV-1737 (DLC), 2013 WL 5298458, at *4 (S.D.N.Y. Sept. 20, 2013) ("That independent judgment must be untainted by 'evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment.'" (quoting Townes, 176 F.3d at 147)). While Townes involved a Fourth Amendment claim, "there is no reason to read Townes as so limited." Wray, 490 F.3d at 194; see also id. ("The holding in Townes rests on the broad principles that [i] 'the goal of the Court's § 1983 jurisprudence has been to tailor liability to fit the interests protected by the particular constitutional right in question,' and [ii] '§ 1983 damages should be made available only for risks that are constitutionally relevant.'" (quoting Townes, 176 F.3d at 148)). Therefore, the court finds no difficulty in applying the Second Circuit's proximate cause requirement to Plaintiff's Sixth Amendment claim in this case.

Here, Plaintiff's Complaint is silent regarding how the unnamed officers' misled or pressured the prosecutors or supervising judge, who could be expected to exercise independent judgment, with respect to the length of Plaintiff's criminal case in state court. See Townes, 176 F.3d at 147. Instead, Plaintiff alleges only that it was nearly four years from when he was first arrested until the dismissal of his charges (see Compl. ¶ 24), and that the prosecution never announced that it was ready for trial, explaining that the complaining witness was getting married, or was sick (id. ¶ 17). While Plaintiff claims these facts establish that Defendants

22

violated Plaintiff's Sixth Amendment right to a speedy trial (id. ¶¶ 19, 40), this is nothing more than a "naked assertion," utterly "devoid of further factual enhancement," which hardly suggests a sheer possibility, let alone plausibility, that the unnamed officers proximately caused the delay of Plaintiff's trial by procuring the unavailability of the complaining witness. See Iqbal, 556 U.S. at 678 (internal quotation marks omitted); see also Wray, 490 F.3d at 195; Lundt, 2013 WL 5298458, at *5 ("It was, of course, the responsibility of prosecutors to make the decision whether to seek an indictment, to address the court during court appearances . . . and to provide defense counsel with discovery materials.").

As a result, Plaintiff has failed to state a claim upon which any relief could be granted, and thus, his Sixth Amendment claim is DISMISSED WITH PREJUDICE. See Cuoco, 222 F.3d at 112 (noting courts should dismiss a claim with prejudice where the complaint, even "liberally read," does not suggest that "the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

### d. Municipal Liability

A municipality cannot be held liable pursuant to 42 U.S.C. § 1983 under a theory of respondeat superior. Monell v. Dep't of Social Servs., 436 U.S. 658, 692 (1978). To the contrary, a municipality may only be held liable for the constitutional violations of its employees when such violations result from the municipality's official policy. Id. at 693. Such a policy may be (1) an express policy; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law,'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)), for example, a failure to train or supervise the municipality's employees that amounts to "deliberate indifference to the rights of persons with whom the police come into contact" such that this shortcoming may "be

23

properly thought of as a city 'policy or custom' that is actionable under § 1983," see City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 389 (1989); Jenkins v. City of N.Y., 478 F.3d 76, 94 (2d Cir. 2007); or (3) a decision by a person with "final policymaking authority," see Praprotnik, 485 U.S. at 123; Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

While Plaintiff might purport to allege the existence of (1) an express policy, or (2) a custom or practice, including a failure to train or supervise amounting to a deliberate indifference, (see Compl. ¶¶ 29 (deliberate indifference), 46 (policies, customs, and practices)), Plaintiff's pleadings are clearly insufficient to survive a motion to dismiss pursuant to Rule 12(b)(6). First, Plaintiff fails to oppose Defendants' motion with respect to the substance of this claim in his moving papers (see Opp'n at 11); as a result, this claim appears to have been abandoned. (See Reply at 3.) Second, as Defendants point out (see Mot. at 15-17), Plaintiff's claim—regardless of which theory it is based on—is supported by nothing more than conclusory, boilerplate statements, which fail to allege any facts from which the court might infer the existence of a practice or policy that has caused an unconstitutional violation. See, e.g., Cuevas v. City of New York, at *4 (S.D.N.Y. Dec. 7, 2009) ("Baldly asserting that Plaintiff's injuries are the result of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right. After stripping away the bare legal conclusions, the Complaint is devoid of any 'well-pleaded factual allegations . . . plausibly [giving] rise to an entitlement to relief.'" (citing Iqbal, 556 U.S. at 679)).

Third, and most significantly, "Monell does not provide a separate cause of action for the failure by the government to train[, supervise, or discipline] its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of N.Y., 459

24

F.3d 207, 219 (2d Cir. 2006). Accordingly, as the court has found that Plaintiff's underlying section 1983 claims must be dismissed, it need not even decide the question of whether Plaintiff has adequately pleaded a Monell claim. See id. ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); see also Johnson v. City of N.Y., 551 F. App'x 14 (2d Cir. 2014) (summary order) ("Because [plaintiff] has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to Monell . . . must also fail." (citing City of L.A. v. Heller, 475 U.S. 796, 799 (1986))); Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist., 11 F. Supp. 3d 348, 373 (E.D.N.Y. 2014) ("The dismissal of Plaintiff's underlying claim for First Amendment retaliation requires dismissal of Plaintiff's municipal liability claim, as Defendants cannot be liable where there is no underlying constitutional violation."). Accordingly, all claims against the City are DISMISSED WITH PREJUDICE.[16]

### 3. State Law Claims

#### a. False Arrest

As Defendants point out, a plaintiff must commence an action against a municipality within one year and ninety days of the date the cause of action accrues. N.Y. Gen. Mun. Law

---

[16] Defendants also contend that Plaintiff's claim with respect to municipal liability is barred by the statute of limitations. (See Mot. at 9; Reply at 3 n.1 (citing Lawson v. Rochester City Sch. Dist., 446 F. App'x 327, 329 (2d Cir. 2011) (summary order) ("We have previously held that a § 1983 cause of action accrues when the plaintiff becomes aware that [he] is suffering from a wrong for which damages may be recovered in a civil action. We decline to eviscerate that rule by holding that the limitations period for a cause of action against a municipality runs anew upon the future discovery of facts tangentially related to [this] claim." (internal citation and quotation marks omitted)). While it is clear that Plaintiff's section 1983 false arrest claim expired—at the latest—by July 7, 2010, see supra Part II.B.2.a, to the extent municipal liability is premised on Plaintiff's section 1983 malicious prosecution claim, this claim may not have accrued before October 15, 2013. See supra Part II.B.2.b. As the foregoing section demonstrates, however, the court need not decide whether the statute of limitations bars Plaintiff's municipal liability claim, as it fails on substantive grounds. See supra Part II.B.2.d.

§ 50-i(1)(c).[17] "The accrual of pendant state law tort claims, such as false arrest, in federal court actions is governed by state law." Mitchell v. Home, 377 F. Supp. 2d 361, 377 (S.D.N.Y. 2005) (citing Walker v. Armco Steel Corp., 446 U.S. 740, 750-51 (1980)). In New York, a state claim for false arrest accrues when a plaintiff is released from pre-arraignment custody. Id. at 378 (citing Molyneaux v. Cnty. of Nassau, 209 N.E.2d 286, 286 (N.Y. 1965) (limitations period began to run when plaintiff was released on own recognizance upon arraignment); Salman v. Econo Lodge, 755 N.Y.S.2d 678, 678-79 (App. Div. 2003) (same)).

Thus, Plaintiff's claims for false arrest accrued when Plaintiff was released from custody on each occasion. See TADCO Const. Corp. v. Dormitory Auth. of State of N.Y., 700 F. Supp. 2d 253, 272-73 (E.D.N.Y. 2010) (citing Roche v. Vill. of Tarrytown, 766 N.Y.S.2d 46, 47 (App. Div. 2003)). As the court noted above, Plaintiff was released from custody after alleged false arrests on December 5, 2006; June 7, 2007; and July 3 or July 4, 2007. See supra Part II.B.2.a. Plaintiff's claims therefore expired on March 4, 2008; September 5, 2008; and, at the latest, October 2, 2008, respectively. Since Plaintiff did not file this action until October 15, 2013, his state law false arrest claim is clearly time-barred. See N.Y. Gen. Mun. Law § 50-i(1)(c).

Plaintiff appears to argue, however, that—at least with respect to his claims that expired after May 15, 2008—the statute of limitations was tolled when he was remanded on May 15, 2008, and continuously held in custody until September 19, 2013. (See Opp'n at 10.) As the court noted above with respect to his federal claim for false arrest, this argument has no basis under New York or federal law. See, e.g., Venticinque, 2010 WL 1486449, at *2 ("While New York has codified a number of statutory tolling provisions, imprisonment does not itself act

---

[17] By contrast, plaintiffs have one year to bring a false arrest claims against an individual. See, e.g., TADCO Const. Corp. v. Dormitory Auth. of State of N.Y., 700 F. Supp. 2d 253, 272-73 (E.D.N.Y. 2010) (citing N.Y. C.P.L.R. 215(3)).

as a toll for prisoners bringing § 1983 claims."); Coleman, 2009 WL 3381541, at *3 (incarceration does not entitle plaintiff to equitable tolling because it is not an extraordinary circumstance within the meaning of Walker, 430 F.3d at 564). As Plaintiff's state law false arrest claim is barred on statute of limitations grounds, this failure would not be cured by further amendment of the pleadings. See Merrill Lynch, 273 F. Supp. 2d at 393. As a result, this claim is DISMISSED WITH PREJUDICE.

### b. *Malicious Prosecution*

A claim for malicious prosecution pursuant to section 1983 is "substantially the same" as a claim for malicious prosecution under state law. Jocks, 316 F.3d at 134 (citing Conway v. Vill. of Mount Kisco, 750 F.2d 205, 214 (2d Cir. 1984)). Since the court has already determined that Plaintiff's federal law claim for malicious prosecution fails on substantive grounds to state a claim upon which relief may be granted, see Fed. R. Civ. P. 12(b)(6), Plaintiff's state law malicious prosecution claim is also DISMISSED WITH PREJUDICE. See supra Part II.B.2.b.

### c. *Negligence*

Defendants construe Plaintiff's seventh cause of action as a state law negligence claim (see Mot. at 21), which Plaintiff does not appear to dispute (see generally Opp'n). As Defendants point out, however, New York law does not recognize a negligence claim in the context of an arrest or the initiation of a prosecution. See, e.g., Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citing Boose v. City of Rochester, 421 N.Y.S.2d 740, 743 (App. Div. 1979)); see also Burbar v. Inc. Vill. of Garden City, 961 F. Supp. 2d 462, 474 (E.D.N.Y. 2013) (quoting Boose, 421 N.Y.S.2d at 744 ("Plaintiff may not recover under broad general principles of negligence, however, but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution.")). As a result, Plaintiff's seventh

cause of action fails to state a claim on which relief can be granted, and is hereby DISMISSED WITH PREJUDICE. See Cuoco, 222 F.3d at 112.

## III. CONCLUSION

For the reasons set forth above, the court finds that Plaintiff's federal and state false arrest claims are barred by the statute of limitations; and each of Plaintiff's other claims fail on substantive grounds to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). As a result, Defendants' motion to dismiss is GRANTED, and each of Plaintiff's claims against the City and the unnamed officers is DISMISSED WITH PREJUDICE.[18]

In addition, Plaintiff is hereby ORDERED TO SHOW CAUSE by Friday, May 1, 2015, as to why his claims against the civilian defendants should not be dismissed for failure to serve. See Fed. R. Civ. P. 4(m). If Plaintiff fails to respond in writing by May 1, 2015, the court will dismiss with prejudice Plaintiff's claims against the civilian defendants, and will direct the clerk of court to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      March 31, 2015

NICHOLAS G. GARAUFIS
United States District Judge

---

[18] Because it has dismissed each of Plaintiff's claims with prejudice, the court need not address Defendants' alternative argument that the unnamed officers would be entitled to qualified immunity. (See Reply at 7.)